IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 10, 2005 Session

# RICHARD A. DEMONBREUN v. METROPOLITAN BOARD OF ZONING APPEALS OF THE METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE

Appeal from the Circuit Court for Davidson County
No. 02C-1999     Carol Soloman, Judge

No. M2004-02402-COA-R3-CV - Filed December 7, 2005

The Metropolitan Davidson County Board of Zoning Appeals ("the BZA") granted Richard A. Demonbreun ("the Landowner") a special exception permit to use his residentially-zoned property as a special event site. The Landowner filed a petition for writ of certiorari and supersedeas, challenging the validity of several restrictions[1] imposed upon the permit. The trial court held that several of the restrictions were unsupported by material evidence, and thus, according to the trial court, were arbitrarily imposed by the BZA. The BZA appeals the trial court's determination with respect to the conditions found to be arbitrary. We affirm in part and reverse in part.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part; Reversed in Part; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

Karl F. Dean, Director of Law, J. Brooks Fox and John L. Kennedy, Metropolitan Attorneys, Nashville, Tennessee, for the appellant, The Metropolitan Board of Zoning Appeals of The Metropolitan Government of Nashville and Davidson County.

Robert W. Rutherford, Nashville, Tennessee, for the appellee, Richard A. Demonbreun.

**OPINION**

---

[1]We will use the terms "restriction" and "condition" interchangeably in this opinion.

The Landowner owns a half-acre piece of property located at 746 Benton Avenue in southeast Nashville. The property lies within an R6, residentially-zoned district and specifically in the Woodland-in-Waverly residential neighborhood. Woodland-in-Waverly is a historic urban neighborhood showcasing houses built as early as the 19th century. The Landowner's property, which he bought in 1995, includes a house built in 1906 and one of the few functioning original carriage houses in Davidson County.

In 1999, the Landowner petitioned the BZA for a special exception permit to use his newly renovated property as a "Historic Home Events" site, which permit would enable him to accommodate weddings, parties, and other special event functions on the property. The BZA granted the Landowner the permit but included the following conditions: (1) the permit would expire in one year, in order to give the BZA a chance to review the permit and see how the conditions were working; (2) the permit was for the Landowner's use only; (3) valet parking was required if more than 25 people attended an event; (4) large buses were not allowed on the street, but shuttle buses were permitted; (5) the number of people attending an event was subject to a maximum of the number of parking spaces times two with a 150-person cap; (6) a maximum of two events were permitted each week; (7) each event had to end and cleanup had to *commence* by 9:00 p.m. on weeknights and by 11:00 p.m. on Friday and Saturday nights; and (8) no tents were allowed in the front yard. In 2000, the BZA again granted the Landowner's permit with the same conditions; however, in 2001, the BZA unanimously denied the Landowner's third permit application because of testimony from Woodland-in-Waverly residents regarding his noncompliance with certain permit conditions. Pursuant to the rules of the BZA, the Landowner reapplied for the permit six months after the 2001 denial. The latter application is the one presently before us.

On July 3, 2002, the BZA held a public hearing on the Landowner's new application. The BZA heard from numerous witnesses, both in support of and in opposition to the application. The record before the BZA also includes numerous letters and emails, which were sent to the BZA by supporting and opposing residents living in the Woodland-in-Waverly neighborhood. At the conclusion of the hearing, the BZA, by a vote of four-to-one, granted the Landowner's application, noting that he had satisfied the necessary criteria for a special exception permit to operate "Historic Home Events" on his property. This time the BZA imposed the following set of slightly-different conditions on the permit: (1) the permit was issued for a period of time not to exceed one year; (2) the permit was for the Landowner's use only; (3) valet parking was required for all events with more than 25 people in attendance; (4) large buses were not allowed on the street, but shuttle buses were permitted; (5) the maximum number of people allowed at each event was not to exceed the number of parking spaces under contract times two with a 150-person maximum; (6) a maximum of two events were permitted each week; (7) events *and* event cleanup had to be *completed* by 9:00 p.m. on weeknights and by 11:00 p.m. on Friday and Saturday nights; (8) no social business/activity of

any kind could be conducted in the front yard; and (9) no other residential property could be used in conjunction with the permit.

The Landowner subsequently filed a petition for writ of certiorari and supersedeas, asserting that the evidence failed to justify certain aspects of conditions (1), (4), (5), (6), (7), and (8). The trial court granted the Landowner's petition. In its memorandum opinion filed August 31, 2004, the trial court held that most of the conditions challenged by the Landowner "were not based on material evidence but on opinions, beliefs and other matters not a part of the record." Specifically, the trial court found that the one-year time limit on the permit, the 150-person maximum per event, the limit on two events per week, the time-of-day limitation by which completion of event cleanup was required, and the prohibition on activities in the front yard were unsupported by material evidence. The BZA appeals the trial court's determination with respect to these five conditions. It claims that there was ample material evidence to support all of the restrictions imposed by it on the Landowner's permit.

II.

The dispositive issue on this appeal is whether the trial court erred in finding that five of the BZA's conditions were unsupported by material evidence. The question of whether there is sufficient evidence to sustain a zoning action is a question of law. *MC Props., Inc. v. City of Chattanooga*, 994 S.W.2d 132, 134 (Tenn. Ct. App. 1999). Hence, appellate review is *de novo* with no presumption of correctness. *Id.*

III.

Judicial review of an action by an administrative body is by way of the common law writ of certiorari. *See* Tenn. Code Ann. § 27-8-101 (2000); *see also* **McCallen v. City of Memphis**, 786 S.W.2d 633, 639 (Tenn. 1990). In such a review, the action of the administrative body may be reversed or modified only upon a determination that the action was: (1) in violation of constitutional or statutory provisions; (2) in excess of statutory authority; (3) an unlawful procedure; (4) arbitrary or caprious; or (5) unsupported by material evidence. *Massey v. Shelby County Retirement Bd.*, 813 S.W.2d 462, 464 (Tenn. Ct. App. 1991).

Our scope of review of this matter is no broader than that of the trial court. "Whether [an] action by [a] local governmental body is legislative or administrative in nature, the court should refrain from substituting its judgment for the broad discretionary authority of the local governmental body." *McCallen*, 786 S.W.2d at 641-42. Courts are not permitted to reweigh the evidence or scrutinize the intrinsic correctness of the decision. *Lafferty v. City of Winchester*, 46 S.W.3d 752,

759 (Tenn. Ct. App. 2000). However, a court should invalidate a decision that is clearly illegal, arbitrary, or capricious. *McCallen*, 786 S.W.2d at 642.

If there is no evidence to support an action of an administrative board, it is arbitrary. *Sexton v. Anderson County*, 587 S.W.2d 663, 667 (Tenn. Ct. App. 1979). The board's determination must be supported by "more than a scintilla or glimmer of evidence. . . . It must be of a substantial, material nature." *Pace v. Garbage Disposal Dist.*, 390 S.W.2d 461, 463 (Tenn. 1965). The "material evidence" standard requires "such relevant evidence as a reasonable mind might accept as adequate to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration." *Id*. We are further mindful that "mere beliefs, opinions and fears of neighborhood residents do not constitute material evidence." *Mullins v. City of Knoxville*, 665 S.W.2d 393, 396 (Tenn. Ct. App. 1983).

IV.

Our analysis of whether the trial court erred in its findings begins with a review of the authority under which the BZA was operating in the instant case. Local governmental entities are specifically authorized to prescribe guidelines and standards for zoning boards to follow in issuing special exception permits. *See* Tenn. Code Ann. §§ 13-7-206(a), -207(2).[2] The zoning law for Nashville and Davidson County provides the following with respect to the BZA's issuance of such permits:

> A. Burden of Proof. A special exception permit shall not be considered an entitlement, and shall be granted by the board of zoning appeals only after the applicant has demonstrated to the satisfaction of the board that all of the required standards are met.
>
> B. Ordinance Compliance. The proposed use shall comply with all applicable regulations, including any specific standards for the proposed use set forth in this title, unless circumstances qualify the special exception for a variance in accordance with Chapter 17.40,

---

[2] Tenn. Code Ann. § 13-7-206(a)(1999) states that

> [t]he zoning ordinance may provide that the board of appeals may, in appropriate cases and subject to the principles, standards, rules, conditions and safeguards set forth in the ordinance, make special exceptions to the terms of the zoning regulations in harmony with their general purpose and intent. . . .

Tenn. Code Ann. § 13-7-207(2) (1999) further provides that the local zoning board of appeals has the power to "[h]ear and decide, in accordance with the provisions of any such ordinance, requests for special exceptions. . . .

Article VIII.  Any accessory use to a special exception must receive express authorization from the board of zoning appeals.

C.  Integrity of Adjacent Areas.  A special exception use permit shall be granted provided that the board finds that the use is so designed, located and proposed to be operated that the public health, safety and welfare will be protected.  The board shall determine from its review that adequate public facilities are available to accommodate the proposed use, and that approval of the permit will not adversely affect other property in the area to the extent that it will impair the reasonable long-term use of those properties.  The board may request a report from the metropolitan planning commission regarding long-range plans for land use development.

D.  Design and Architectural Compatibility.  The operational and physical characteristics of the special exception shall not adversely impact abutting properties, including those located across street frontages.  Site design and architectural features which contribute to compatibility include, but are not limited to, landscaping, drainage, access and circulation, building style and height, bulk, scale, setbacks, open areas, roof slopes, building orientation, overhangs, porches, ornamental features, exterior materials and colors.

E.  Natural Features.  Special exception uses in residential zone districts must comply with the nonresidential tree protection regulations and other natural site features shall be preserved to the greatest extent possible so as to minimize the intrusion of nonresidential structures and parking areas.

F. Historic Preservation. Features of historical significance shall not be adversely affected by the granting of any special exception.  The metropolitan historic zoning commission shall be consulted regarding those features essential to preserve the historical integrity of a building or site of historical significance.

G.  Traffic Impact.  The applicant shall demonstrate how the proposed use will not adversely affect the safety and convenience of vehicular and pedestrian circulation in the area.  The board of zoning appeals may require a traffic impact study for any special exception land use.

\* \* \*

I. Hazard Protection. The proposed use shall reasonably protect persons and property from erosion, flooding, fire, noise, glare or similar hazards.

*J. Special Conditions. Notwithstanding a finding by the board of zoning appeals that a special exception application satisfies the minimum development standards of this article, the board may restrict the hours of operation, establish permit expiration dates, require extraordinary setbacks and impose other reasonable conditions necessary to protect the public health, safety and welfare.*

Metro Code of Laws ("M.C.L.") § 17.16.150 (emphasis added). The grant of a special exception permit to operate "Historic Home Events" is further subject to the following set of standards and limitations:

C. Historic Home Events.

1. Lot Size. The minimum bulk standard for the zone district shall apply.

2. Location. The events shall be within a historically significant structure, as determined by the historic zoning commission.

3. Parking. Where the minimum parking space standard requires additional parking area to be constructed, such area shall comply with the perimeter parking lot landscaping according to Chapter 17.24 of this code. In urban settings, the board of zoning appeals may consider on-street parking to satisfy the minimum parking standard, provided there is a finding of sufficient available public space.

4. Signs. Signs for advertising shall not be permitted.

5. Meals. Meal service shall be restricted to patrons of the special event only, and not to the general public.

6. Owner-Occupied. The owner of the property must reside permanently in the historic home. Where there is more than one owner of the home, or where an estate, corporation, limited partnership or similar entity is the owner, a person with controlling interest, or possessing the largest number of outstanding shares owned by any single individual or corporation, shall reside permanently in the historic home. If two or more persons own equal shares that represent the largest ownership, at least one of the persons shall reside permanently in the historic home.

7. *Frequency of Events. The board of zoning appeals may limit the number and frequency of events to minimize disturbance to surrounding properties.*

-6-

M.C.L. § 17.16.160.C. (emphasis added). As noted earlier, the BZA found that the Landowner satisfied the criteria for the special exception permit, but, as authorized by the above-emphasized provisions, the BZA also chose to impose certain conditions on the permit. Our focus is, therefore, upon whether the evidence supports the BZA's imposition of the conditions, which were challenged by the Landowner and found to be arbitrary by the trial court.

The first condition we address is the BZA's limitation of the permit to "a period of time not to exceed one year." The Landowner agrees with the trial court's conclusion that the record contains no justification for this condition. He argues that this condition is in the nature of *enforcement* and beyond the jurisdiction of the BZA. We agree with the BZA's argument that there is material evidence to support this restriction on the Landowner's permit. The governing ordinance authorizes the BZA to establish permit expiration dates. M.C.L. § 17.16.150.J. The BZA has an interest in ascertaining whether a permit holder is abiding by its standards and conditions. Furthermore, nothing in the applicable zoning law precludes the BZA's establishment of a permit expiration date solely for the purpose of review and enforcement purposes.

While acknowledging the BZA's authority to impose an expiration date on the permit, the trial court held that the record was devoid of evidence justifying the BZA's imposition of a one-year expiration. We do not agree. In addition to presenting evidence regarding noise, traffic, and parking problems caused by the Landowner's events, the opposition testified to, and presented charts, letters, and emails reflecting, the Landowner's previous noncompliance with permit conditions and his continued operation after the BZA's denial in 2001. Evidence also established that the Landowner continued to operate after he was served with a cease-and-desist notice in April, 2002. The Landowner admitted certain violations of the permit and also acknowledged that, for a period of time, he had operated his facility without a permit. In light of the Landowner's documented history of noncompliance and the continued complaints by neighboring residents, the BZA could reasonably conclude that a review of the permit within twelve months was necessary and appropriate. Thus, we hold that the condition providing that the permit is "for a period of time not to exceed one year" is supported by material evidence.

We next consider the BZA's capping of the maximum number of guests allowed to attend an event at 150 people. The trial court "was unable to find any evidence whatsoever upon which this condition was based." We disagree. The evidence before the BZA included the testimony, emails and letters of numerous Woodland-in-Waverly residents stating their opposition to the Landowner's continued use of his property for "Historic Home Events" because of noise and other disturbances caused by the events. One neighbor testified that the noise had kept his child up at night, and that he and his two-year-old had encountered intoxicated guests while walking in the neighborhood one day. Another neighbor emailed a complaint to the BZA noting a particular event with many cars and people in attendance, the presence of a "VERY loud" band, and the use of a microphone in the front yard. (Capitalization in email). Yet another neighbor testified to witnessing a line of event traffic

make U-turn after U-turn on a narrow neighborhood street. The opposition's complaints and statements regarding specific disturbances and the fact that the residents of the Woodland-in-Waverly neighborhood live in such close proximity to one another supports the BZA's imposition of this condition. The BZA had evidence from which it could reasonably conclude that events tended to disturb the surrounding residents; and logic would reflect that there is a natural relationship between the number of people at an event and the magnitude of the disturbance.

The BZA argues that there is material evidence to support the restriction limiting the Landowner to two events per week. The rationale behind the Landowner's challenge to this condition was that, because the evidence suggested that smaller events (*i.e.,* retreats and luncheons) had no adverse impact on the neighborhood, the BZA's failure to differentiate between *small events* and *large events* was arbitrary. The trial court determined that the evidence did not support the condition limiting the Landowner to two events per week, and that "the evidence would more reasonably sustain a contrary position." Given our limited scope of review in this case, we cannot agree with the trial court's determination that this condition was unsupported by material evidence. The BZA's condition limiting the Landowner to two events per week is not rendered arbitrary or unsupported by material evidence simply because the record also would have supported two different approaches, one for small events and one for large events. All that must exist for this condition to be upheld is "such relevant evidence as a reasonable mind might accept as adequate to support" the two events per week limitation. *Pace*, 390 S.W.2d at 463. The opposition's testimony and evidence regarding general, and specific, disturbances caused by the Landowner's events could lead the BZA to reasonably conclude that a limit on the number of events held each week was appropriate. *See* M.C.L. § 17.16.160.C.7. (noting that the BZA can limit the number and frequency of events to minimize disturbance to surrounding properties).

We next consider the BZA's condition requiring the completion of events *and* event cleanup by 9:00 p.m. on weeknights and 11:00 p.m. on weekends. The Landowner argues that there is no material evidence to support this condition. The trial court found "that some evidence exists in the record which would justify limiting the time for events, but that no evidence exists regarding the clean up afterward." Thus, the trial court held that "the totality of that portion of the [BZA's permit] regarding time limits on clean up" was unsupported by material evidence. We agree with the trial court's conclusion regarding this condition. Testimony and emails note instances of late night noise caused by loud music and the like on the Landowner's property; however, the record is devoid of testimony or documented complaints suggesting that event cleanup activities were the cause of any such disturbances. We hold there is material evidence to support the BZA's time restriction on the actual events, but not on event cleanup activities.

The final challenged condition is the BZA's prohibition on "social business/activity of any kind to be conducted in the front yard." The trial court was not "persuaded that material evidence was presented to the [BZA] which would support such a condition." The only evidence in the record which relates to this condition is as follows: most weddings held at the Landowner's property occur

in the front yard; the Landowner's 1999 and 2000 special exception permit included a prohibition on "tents in the front yard"; the Landowner admitted that he violated this condition on at least one occasion; testimony and pictures establish that the Landowner placed a large white curtain around the perimeter of the front yard for one event; and there were complaints regarding crowds, chairs, and microphone use in the front yard. While there is evidence from which the BZA could have reasonably concluded that activities in the front yard should be restricted,[3] we find a lack of evidence supporting a *blanket* prohibition of activities, regardless of type or size, on this valuable part of the Landowner's property. Accordingly, we affirm the trial court's judgment with respect to this blanket prohibition.

The BZA further argues that, because the Landowner promised, during the BZA's hearing, to "walk the chalk" and "comply with any conditions" imposed by the BZA, he is required to comply with the challenged conditions. It is true that the Landowner personally pledged to abide by any conditions if the BZA would again grant him a special exception permit; but the Landowner's pledge cannot be construed as carte blanche to impose any and all restrictions as may seem appropriate to the BZA regardless of whether there is material evidence to support them. His pledge certainly cannot be seen as an agreement to abide by arbitrarily-imposed restrictions.

V.

The BZA also raises the issue of whether the trial court erred in issuing its writ of supersedeas at the outset of this case. The trial court's writ ordered the BZA to desist from enforcing the conditions challenged by the Landowner until the trial court determined the merits of the challenged conditions. The BZA moved to dissolve the writ of supersedeas in August, 2002, and in February, 2004, but the trial court denied both motions. The BZA argues that the trial court's writ exceeded the court's authority to maintain the status quo when it gave the Landowner the right to conduct his events without several of the conditions imposed by the BZA. *See **McKee v. Bd. of Elections***, 116 S.W.2d 1033, 1037 (Tenn. 1938) (stating that the writ of supersedeas does not have authority "beyond that of a stay order, maintaining the status quo as of the time of its issuance, . . ."). The issue of whether the writ of supersedeas was too expansive is now moot. Accordingly, we decline to address it.

---

[3]We decline to state what we think those restrictions might be. It is not for us to impose new conditions not imposed by the BZA. The only question for us is whether there is material evidence to support a given condition. We do not find material evidence to support a condition absolutely forbidding the Landowner to use his front yard in connection with all events, regardless of type or size.

## VI.

The judgment of the trial court finding no material evidence to support the requirement of the completion of event cleanup activities by a certain time and the prohibition on the Landowner's "social business/activity" use of his front yard is affirmed. The judgment of the trial court finding no material evidence to support the one-year limitation on the Landowner's special exception permit, the 150-person limitation on the number of guests allowed to attend an event at the Landowner's property, and the two-event limitation per week is reversed. This case is remanded to the trial court for such further proceedings, if any, as may be required, consistent with this opinion. Exercising our discretion, we tax the costs on appeal one-half to the appellant, the BZA, and one-half to the appellee, Richard A. Demonbreun.

_____
CHARLES D. SUSANO, JR., JUDGE