IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 9, 2007 Session

# BRUCE WOOD, ET AL. v. METROPOLITAN NASHVILLE BOARD OF HEALTH, ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 05-275     Ellen Hobbs Lyle, Chancellor**

_____

**No. M2006-01599-COA-R3-CV - Filed November 28, 2007**

_____

This is an appeal challenging the issuance of several permits to North American Galvanizing Company by the Air Pollution Division of the Metropolitan Department of Health. Appellants base their challenge on the failure of the Department to consider the location of the company as well as noise and exhaust fumes arising from truck traffic traveling through a residential neighborhood to and from the company. They also challenge the representation of both the Department and the Board of Health by Metropolitan Department of Law attorneys. The Chancellor ruled against the appellants. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the court, in which DON ASH, SP.J., joined. PATRICIA J. COTTRELL, P.J., M.S., not participating.

Bruce Wood, *Pro Se*; Bessie Hanserd, *Pro Se*; Elizabeth Harris, *Pro Se*; R.C. Bartlett, *Pro Se*; Susan Henderson, *Pro Se.*

Lora Barkenbus Fox and Paul J. Campbell, II, Nashville, Tennessee, for the appellees, Metropolitan Nashville Board of Health and Metropolitan Nashville Government.

Anne C. Martin and Susan High-McAuley, Hendersonville, Tennessee, for the appellee, North American Galvanizing.

## OPINION

North American Galvanizing Company operates a plant at 200 32nd Avenue North in Nashville. The plant has been at the same location since 1956, although it was not known as North American Galvanizing until 1996. Galvanizing is a process that adds a protective outer layer to steel. Galvanizing provides long-term protection from rust and the elements. Items to be galvanized are brought to the plant largely by eighteen wheel diesel trucks. Prior to the construction of I-440 in the 1970s, the trucks turned off Charlotte Avenue onto 32nd Avenue North and proceeded directly

to the plant. I-440 blocked this most direct access to the plant. Today, trucks turn on 33rd Avenue North, turn left on Elkins Avenue and then right onto 32nd Avenue to reach the plant.

North American Galvanizing was not required to have an air pollution permit from the Metropolitan Government prior to 1999. The company had existed at the same location long before air quality standards were created, so it was "grandfathered" in. Furthermore, the company was such a minor source of air pollution that no permit was required. In 1999, the company sought to replace its old 42 foot long galvanizing kettle with a new 51 foot kettle. This required a construction permit. The Air Pollution Division of the Metropolitan Department of Health ("Department") granted the company's application and issued permit C-1794, which allowed the company to build the new kettle and served as a temporary operating permit. By late 2001, the company had met the requirements of this permit. Also in late 2001, North American Galvanizing transferred a 14 foot galvanizing kettle to Nashville from Tulsa, Oklahoma. This necessitated a new permit application, which was filed on January 4, 2002. A revised application was submitted March 25, 2002.

During the Department's review of the permit applications in 2002, a public notice of the applications was published in *The Tennessean* on January 15, 2002. A number of persons submitted written comments and one or more requested a public hearing. Notice of the hearing was published in *The Tennessean* on February 26, 27 and 28, 2002. In connection with the April 2, 2002 hearing, verbal and written comments were provided regarding such topics as regulatory authority, monitoring, plant emissions, pollution control equipment, and zoning, as well as traffic, noise and emissions from trucks transporting materials to and from the plant. After considering the application and the public's concerns, the Department issued revised permit C-1794, operating permit 290-1 and construction permit C-1991 on August 5, 2002. The Department viewed several of the matters raised by the public comments as falling outside its jurisdiction and referred them to another agency. Upon issuing the permits, the Director of the Pollution Control Division specifically wrote the Metropolitan Zoning Administrator indicating that several public commentators were concerned that the property where the plant was located was not zoned correctly and that its operations created excessive noise.

Appellants[1] are a group of private citizens and residents of Davidson County near the plant who appealed the issuance of the permits to the Board of Health. The Board referred the matter to an administrative law judge for a formal hearing pursuant to Tenn. Code Ann. § 7-7-105. The administrative law judge held the hearing on July 29-31, 2003 and on June 9, 2004 issued his recommendation upholding the Department's decision to issue the permits. The Board of Health approved the recommendation to issue the permits on October 12, 2004. Appellants filed a writ of certiorari in Chancery Court, which was denied. Appellants appeal now to this Court.

### STANDARD OF REVIEW

Under the common law writ of certiorari, the reviewing court must examine whether the municipal agency's action is illegal, in excess of its jurisdiction, arbitrary or capricious. *McCallen*

---

[1] Mr. Bruce Wood, Mrs. Bessie Hanserd, Mrs. Elizabeth Harris, Mr. R. C. Bartlett and Ms. Susan Henderson.

*v. City of Memphis*, 786 S.W.2d 633, 638 (Tenn. 1990). In doing so, the court determines whether there is any material evidence that supports the action of the administrative agency. *Laidlaw Envtl. Servs. of Nashville, Inc. v. Metro. Bd. of Health for Nashville and Davidson County*, 934 S.W.2d 40, 49 (Tenn. Ct. App. 1996). Sufficiency of evidence is a question of law, thus we review de novo with no presumption of correctness. *Lafferty v. City of Winchester*, 46 S.W.3d 752, 759 (Tenn. Ct. App. 2000). Courts must not reweigh the evidence or scrutinize the intrinsic correctness of the decision, *Demonbreun v. Metro. Bd. of Zoning Appeals*, 206 S.W.3d 42, 46 (Tenn. Ct. App. 2005), but independently review the record to ensure "it contains 'such relevant evidence that a reasonable mind might accept as adequate to support a rational conclusion.'" *Lafferty*, 46 S.W.3d at 759 (quoting *Hedgepath v. Norton*, 839 S.W.2d 416, 421 (Tenn. Ct. App. 1992)).

Appellants raise several issues, but they all center on two questions: whether the Pollution Control Division is authorized to consider the noise and other circumstances arising from truck traffic going through the residential neighborhood to and from North American Galvanizing, and whether the Metropolitan Department of Law's representation of both the Department and the Board of Health is proper.

## SCOPE OF AUTHORITY OF THE POLLUTION CONTROL DIVISION OF THE DEPARTMENT OF HEALTH

Appellants base their case on portions of Metropolitan Code Chapter 10.56, which governs air pollution control. Rules of statutory construction apply to local ordinances. *Jordan v. Knox County*, 213 S.W.3d 751, 763 (Tenn. 2007). When statutory language is clear and unambiguous courts must apply its plain meaning without any forced interpretation that would limit or expand the statute's application. *Jordan,* 213 S.W.3d at 763. Appellants admit that § 10.56.050(A)(7) exempts "[m]obile sources, such as automobiles, trucks, busses, locomotives, airplanes and boats," from the municipal pollution provisions. They point, however, to subsection (B) as authority for the Department to consider matters they raise – the location of the plant, the noise created by delivery trucks and the exhaust fumes from the trucks. Subsection (B) states:

> Notwithstanding the exemptions granted in Paragraph A of this section, no person shall discharge, from any source whatsoever, such quantities of air contaminants or other materials which cause or have a tendency to cause, injury, detriment, annoyance, or adverse effect to the public.

Metro. Code § 10.56.050(B).

Appellants also rely on Metro. Code § 10.56.170, which states:

> No person shall cause, suffer, allow or permit any emission of gases, vapors or objectionable odors beyond the property line from any source whatsoever which causes injury, detriment, nuisance or annoyance to any considerable number of persons or to the public, or which causes or has a natural tendency to cause injury or damage to business or property.

Metro. Code § 10.56.170.

The Court does not wish to trivialize the concerns of Appellants. The matters they raise deal with the conduct of their daily lives and the enjoyment of their property. However, the air pollution rules and permitting process simply do not offer them a vehicle for relief. To nullify the exemptions in subsection § 10.56.050(A), subsection (B) requires that the offending entity "discharge ... air contaminants or other materials...." Clearly, the issues of zoning and noise do not fall within the scope of subsection (B) since they involve no discharge.

Section 10.56.170 provides no possibility of relief either. There is no showing that North American Galvanizing is emitting odors from its property. Appellants rely heavily on *Laidlaw* for a number of propositions, however, *Laidlaw* does not support Appellants' claims. In that case, odors from a wastewater treatment facility spread beyond the boundaries of the facility's property. *Laidlaw*, 934 S.W.2d at 42. Section 10.56.170 clearly allowed the Department action because it addresses "any emission of gases, vapors or objectionable odors beyond the property line...." That is not the situation in this case.

What is really at issue is the noise and/or pollution allegedly emitted from delivery trucks traveling to and from North American Galvanizing. North American Galvanizing does not own the delivery trucks. Furthermore, the record is clear about how polluting delivery trucks are treated. Mr. Rob Raney, the Director of the Department's Pollution Control Division, testified at the administrative hearing that the individual trucks are cited[2] for polluting, "so [the citation] gets to the owner, whoever owns it." Thus, vehicular pollution is not considered part of the pollution source that is the object of the permit, in this case, the North American Galvanizing plant. This is a reasonable administrative interpretation which requires every vehicle to adhere to air pollution standards. Vehicular pollution is addressed separately from other sources in Code § 10.56.240 (B)-(D). The air pollution provisions simply do not allow the delivery trucks to be considered when deciding whether to issue construction or operating permits to North American Galvanizing.

Appellants suggest that *Laidlaw* allows the Department to consider the problems they raise. We agree *Laidlaw* does say that under the Metropolitan Code § 10.56.100, "[t]he Board is clearly authorized to consider the location and surrounding area of the source of pollution 'in exercising its powers....'" *Laidlaw*, 934 S.W.2d at 53. The Board's powers, however, relate only to preventing, abating and controlling air pollution. Metro. Code § 10.56.100. Because truck emissions are treated separately under the Code, we decline to consider them part of the "surrounding area" of the plant.

A review of the record reveals ample evidence supporting the Department's issuance of the permits. As such, the Department's actions were not arbitrary or capricious and must be affirmed.

### REPRESENTATION BY THE METROPOLITAN DEPARTMENT OF LAW

---

[2] Mr. Raney was discussing Section 10.56.240(A) opacity standards. Subsection ( C ) requires current smoke and odor elimination equipment on all buses and trucks registered in the metropolitan government area.

Appellants maintain that the same Metropolitan attorney represented the interests of the Director of the Air Pollution Division and the Board of Health. The record, however, does not support Appellants' contention. The administrative record indicates at page 8 that attorney Lora Barkenbus represented Metro in the hearing before the administrative law judge. At page 267 of the administrative record it is equally clear that attorney Margaret Holleman of the Metropolitan Department of Law advised the Board of Health.

The Metropolitan Charter requires the Department of Law to provide counsel to the Department and to the Board. Metropolitan Charter § 8.602(b). As the Scope section of the Rules of Professional Conduct observes, "governmental lawyers ... may be authorized to represent several government agencies, officers, or employees in legal controversies in circumstances where a private lawyer could not represent multiple private clients." Tenn. Rules of Prof'l Conduct, Scope ¶ (4). It was the Department of Law's duty under the Metropolitan Charter to furnish legal advice and representation in this matter. One attorney advised the Board while another attorney represented Metro. There is nothing illegal or unethical about this arrangement.

The decision of the Chancery Court is affirmed in all respects.

Costs of appeal are assessed against Appellants, for which execution, if necessary, may issue.

_____
ANDY D. BENNETT, JUDGE