IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 22, 2015 Session


## GREEN HILLS NEIGHBORHOOD ASSOCIATION, ET AL. V. THE METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY TENNESSEE, ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 14577IV      Russell T. Perkins, Chancellor**

_____

**No. M2014-01590-COA-R3-CV – Filed May 18, 2015**

_____

A developer submitted a final site plan for a mixed-use development in the Green Hills area of Nashville for approval to the Metropolitan Nashville Planning Department; the plan was approved first by the Department's Executive Director and later by the Metropolitan Planning Commission. A neighborhood association composed of residents in the area, as well as an individual Green Hills resident, filed a petition for certiorari review of the Commission's approval of the final site plan. Upon review of the administrative record and following a hearing, the trial court affirmed the decision and dismissed the writ with prejudice; Petitioners appeal. We concur with the trial court and affirm the decision of the Commission.

 **Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

Peter H. Curry, Nashville, Tennessee, for the appellant, Green Hills Neighborhood Association and Cecelia Smith.

John L. Farringer, IV, Nashville, Tennessee, for the appellee, Green Hills Mixed Use, LLC.

Saul Solomon, Director of Law; J. Brooks Fox, Lora Barkenbus Fox, Catherine J. Dundon, Nashville, Tennessee, for the appellee, The Metropolitan Government of Nashville and Davidson County, et al.

1

**OPINION**

## I. FACTUAL BACKGROUND

On February 13, 2014, Green Hills Mixed Use, LLC ("Green Hills") submitted an application to the Metropolitan Nashville Planning Department ("the Department") for approval of a proposed 2.67 acre mixed-use development at the corner of Hillsboro Pike and Richard Jones Road in Nashville. The property on which the development is to be built is located in a Shopping Center Regional ("SCR") base zone and includes an urban design overlay designated as the Green Hills Urban Design Overlay ("Green Hills UDO").[1] The development includes two four-story commercial buildings, one of which fronts on Hillsboro Pike and the other which fronts on Richard Jones Road, an 11-story residential building, and a 17-story residential tower; both residential buildings are located at the rear of the tract.

After submitting the application, Green Hills received comments from Department staff members and various other Metropolitan Government ("Metro") agencies requesting revisions to portions of the plan; Green Hills submitted an amended plan on March 17. On March 20, Richard Bernhardt, Executive Director of the Department, sent a letter to Southern Land Company stating, "On behalf of the Metropolitan Planning Commission and pursuant to Rule VIII E, the final site plan dated March 17, 2014 . . . has been approved with [certain] conditions."[2]

On March 27, 2014, the Metropolitan Planning Commission ("the Commission") met; a portion of the agenda was set aside for "OTHER BUSINESS: ITEM 14-Presentation of 4000 Hillsboro Pike in the Green Hills UDO." Another section of the agenda, also titled "Other Business," included the item "Accept the Director's Report and Approve Administrative Items." Prior to the presentation of the Green Hills UDO, Doug Sloan, Deputy Director of the Department, advised the Commission that the project had already been "administratively approved," that it was an item for approval by the Commission, and that, because the project was not a rezoning or a policy change, a public hearing was not required. Thereafter, Andrew Collins, a Planner II for the Department, presented the request for approval, stating that the project met "all of the standards of the

---

[1] An overlay zone is a type of amendment to a zoning plan incorporating specific and distinct restrictions to particular land areas; it may include "a development review process that provides for specific site-plan and design review or incentive bonuses and linkage requirements." Arden H. Rathkopf et al., *Rathkopf's The Law of Zoning and Planning* § 38:7 (4th ed. 2015). An urban design overlay is such an amendment to a zoning plan. *Id*. at § 38:9.

[2] The application was signed by Shane White, Senior Planner and Landscape Architect for Southern Land Company, which Green Hills identifies in its brief as an affiliated entity. On the application, Green Hills was designated as the "Property Owner" and Southern Land as the "Company."

UDO and base zoning" and that it was developed under the property's existing entitlements; the Commission voted unanimously to approve the request.

On April 21, 2014, the Green Hills Neighborhood Association and Cecelia Smith ("Petitioners") filed a petition for a writ of certiorari in Davidson County Chancery Court pursuant to Tenn. Code Ann. § 27-8-101 and § 27-9-101, seeking review the Commission's approval of the plan; the petition named Metro, the Commission, and SLC Philadelphia, LLC as respondents.[3] Petitioners alleged that the Commission violated the procedures required to approve the plan; that the plan lacked the details required for approval; that the 17-story tower violated various height restrictions in the Metro zoning code and the Green Hills UDO; and that Green Hills was not entitled to certain development incentives contained in the UDO.[4] The writ issued and the record of the Commission was duly certified and filed with the court.

On July 16, 2014, the court held a hearing and, on July 18, entered an order affirming the Commission's action and dismissing the writ with prejudice. Petitioners appeal, contending that the Commission illegally delegated its authority to approve the final site plans to the Executive Director, that the staff misinterpreted and misapplied the UDO standards when it approved the development, and that the 17-story tower violates the Metro Zoning ordinance.

## II. STANDARD OF REVIEW

Judicial review of an action by an administrative body, such as the Metropolitan Planning Commission, is by way of the common law writ of certiorari. Tenn. Code Ann. § 27-8-101; *see also Demonbreun v. Metropolitan Bd. of Zoning Appeals*, 206 S.W.3d 42, 46 (Tenn. Ct. App. 2005); *McCallen v. City of Memphis*, 786 S.W.2d 633, 639 (Tenn. 1990). Under the common law writ of certiorari, review is limited to whether the administrative body exceeded its jurisdiction or acted illegally. Tenn. Code Ann. § 27-8-101; *Demonbreun*, 206 S.W.3d at 46; *Massey v. Shelby County Retirement Bd.*, 813 S.W.2d 462, 464 (Tenn. Ct. App. 1991). Action that can be characterized as arbitrary or

---

[3] On May 8, 2014, an order was entered substituting Green Hills for SLC Philadelphia, LLC, as the Respondent.

[4] Seven exhibits were attached to the petition: (1) The March 20, 2014 Bernhardt letter to Southern Land; (2) Metropolitan Ordinances 17.36.270-320, relating to Urban Design Overlay Districts; (3) Metropolitan Ordinance 17.40.130, which sets forth application, recommendation and approval procedures for proposed Urban Design Overlay Districts, and approval of site plans for projects within such districts; (4) Metropolitan Ordinance 17.40.170, relative to approvals of Final Site Plans; (5) Rules and Procedures which were adopted on May 15, 2005 by the Commission relative to its consideration of Final Site Plans; (6) Ordinance No. BL2002-1083, which established the Green Hills UDO applicable to the property at issue in this case; and (7) Metropolitan Ordinance 17.12.060, which establishes regulations on the height of buildings in the various zoning districts.

capricious or that is unsupported by material evidence also warrants reversal or modification. *Demonbreun*, 206 S.W.3d at 46; *Massey*, 813 S.W.2d at 464; *McCallen*, 786 S.W.2d at 642. "[T]he court's primary resolve is to refrain from substituting its judgment for that of the local governmental body." *McCallen*, 786 S.W.2d at 641; *See Capps v. Metro. Gov't of Nashville and Davidson Cty.*, 2008 WL 5427972, at *6 (Tenn. Ct. App. Dec. 31, 2008) ("In recognition of the policy that favors permitting the community decision-makers closest to the events to make the decision, the courts refrain from substituting their judgments for the broad discretionary power of the local governmental body"). Our scope of review is no broader than that of the trial court. *Demonbreun*, 206 S.W.3d at 46.

## III. DISCUSSION

The first issue we address is Petitioner's contention that the Commission could not lawfully delegate its authority to the Executive Director because the approval of the final site plan is not a ministerial act but is "the exercise of legislative, discretionary function/authority."

Tenn. Code Ann. § 13-4-101 gives Metro the authority to create a planning commission and § 13-4-103 grants planning commissions such power "as may be necessary to enable it to perform its purposes and promote municipal planning"; the Commission was established and designated as Metro's "official planning agency" at Section 11.501 of the Metropolitan Charter. Section 11.504 of the Charter grants the Commission:

> [P]owers, duties and responsibilities which are now or may be hereafter granted to municipal planning commissions, regional planning commissions or metropolitan planning commissions by general state law, including specifically but not limited to such powers, duties and responsibilities with respect to general planning, zoning and subdivision regulations as are granted by the following chapters of title 13 (Public Planning and Housing) of the Tennessee Code Annotated: chapter 3, part 1 (Regional Planning Commissions); chapter 3, part 4 (Regional Planning Regulations); chapter 7, part 1 (County Zoning Regulations); chapter 4, part 1 (Municipal Planning Commissions); chapter 4, part 3 (Municipal Planning Regulations); and chapter 7, part 2 (Municipal Zoning Regulations); provided such powers, duties and responsibilities are not in conflict with the provisions of this article. . . .

4

Metro receives its authority to regulate the location, height, and size of buildings and other structures within its jurisdiction from Tenn. Code Ann. § 13-7-101.[5] Pursuant to that authority, Metro has created overlay districts to address "specific aspects of land use control or development design that transcend conventional zoning district provisions." Metropolitan Code 17.36.010.[6]

Metropolitan Code 17.40.170 B[7] requires the Commission to approve final site plans within design overlay districts. To fulfill this function, the Commission has

---

[5] The Metropolitan Government of Nashville and Davidson County was created pursuant to Tenn. Code Ann. § 7-1-103, which also grants it the authority to "perform all, or substantially all, of the governmental and corporate functions previously performed by the county and by the municipal corporation . . . ."

[6] The urban design overlay was created at Metropolitan Code 17.36.270 with the purpose to:

[A]llow for the application and implementation of special design standards with the intent of achieving a sense of place by fostering a scale and form of development that emphasizes sensitivity to the pedestrian environment, minimizes intrusion of the automobile into the urban setting, and provides for the sensitive placement of open spaces in relationship to building masses, street furniture and landscaping features in a manner otherwise not insured by the application of the conventional bulk, landscaping and parking standards of this title. Application of this special overlay district shall be limited to areas requiring specialized design standards either to maintain and reinforce an established form or character of development, or to achieve a specific design objective for new development. Any application for an urban design overlay district shall include design goals and objectives that embody this purpose and intent.

[7] Metropolitan Code 17.40.170 B states in pertinent part:

Final Approval by the Planning Commission. Planning Commission approval shall be required for a final site plan within a SP district, DTC district, landmark sign designation or within the overlay districts known as planned unit development (PUD), urban design, and institutional.

1. Application for Final Approval. A final site plan application filed with the planning commission shall consist of a detailed set of construction plans that fully demonstrate compliance with all applicable provisions of this title and accurately represent the resulting form of construction. Applications shall include all necessary drawings, specifications, studies or reports as required by a submittal checklist adopted by the planning commission.

2. Final Report. A written report from the staff of the planning commission shall be submitted to the commission prior to consideration of a final site plan. The report shall adequately describe the location, nature and scope of the final site plan, and its conformance with applicable codes and regulations.

3. Bases for Final Site Plan Approval. Approval of a final site plan shall be based on demonstrated compliance with all applicable provisions of this title.

promulgated specific Rules and Procedures; of particular import to this case is Rule VIII-E which states:

> FINAL SITE PLANS. The Commission is required to act upon final site plans for certain development applications pursuant to Section 17.40.170 B. of the Metro Code. Such proposals must be submitted a minimum of 42 calendar days prior to the meeting at which they are to be considered.
>
>> Administrative approval. The Executive Director is authorized to act on behalf of the Commission to approve or approve with conditions any final site plan submitted pursuant to Section 17.40.170 B of the Metro Code that the Executive Director determines to be (1) consistent with the enacting ordinance approved by the Metro Council and (2) eligible for approval pursuant to all relevant provisions in the Metro Code. Such action by the Executive Director shall be memorialized in a letter from the Executive Director to the applicant and conveyed to the Commission. If the Executive Director finds that the final site plan should not be approved or where the Executive Director, in his/her judgment, feels that consideration by the Planning Commission is warranted, then the final site plan may be submitted to the Commission for action. The Executive Director may also waive the requirement for any item normally required to be submitted as part of a final site plan application if the Executive Director determines that the information is not required to permit adequate review and approval of the final site plan.[8]

It is within this context that we consider Petitioners' challenge.

Tenn. Code Ann. § 13-4-103 grants planning commissions broad authority to effectuate municipal planning; there is no explicit prohibition on the delegation of

---

> For property located within a planned unit development (PUD) district, the final site plan shall conform to the general development concept and approval provisions of the master development plan.
>
> 4. Planning Commission Action. The planning commission shall act to approve, conditionally approve or disapprove a final site plan application. . . .

[8] Attached to the petition was a version of the Commission's Rules and Procedures that was last amended on August 11, 2011; the version included in the record on appeal was last amended on February 27, 2014. There is no substantive difference between the two versions; however, because the latter was adopted prior to the Executive Director's consideration of the final site plan, we have referred to it in this opinion.

authority to the Commission's staff or employees. In accordance with Rule VIII-E, the Executive Director was authorized to determine whether Green Hills' plan was consistent with and eligible for approval based on the standards of the base zoning as modified by the Green Hills UDO. The determination of whether the Green Hills plan complied with those standards did not call for the adoption of a new zoning regulation or an amendment to the existing zoning laws, which would have constituted legislative action. Neither does the rule give the Executive Director discretion in making such a determination; rather, the rule only allows him/her to review the plan to see whether it complies with the SCR zoning regulations and the Green Hills UDO. The procedure set forth in the rule constitutes an administrative function; as such, it does not contravene the general rule against the delegation of functions which involve the exercise of discretion and judgment. *See City of Rockwood v. Cincinnati, N.O. & T.P. Ry. Co.*, 22 S.W.2d 237, 240 (Tenn. 1929) ("The general rule against delegation by municipal bodies does not forbid the delegation of ministerial, executive, or administrative functions to subordinate officials."); *see also Lotspeich v. City of Morristown*, 207 S.W. 719, 721 (Tenn. 1918). In any event, in accordance with the rule and in compliance with Metropolitan Code 17.40.170 B, the plan was presented to and approved by the Commission; the procedure followed was lawful.

We next address Petitioners' contention that the 17-story tower violates Section B.5 of the Green Hills UDO, which sets a 60-foot maximum building height at the "build-to line" of Hillsboro Pike.[9] Petitioners argue that the Commission allowed Green Hills to incorporate residential space to which it was not entitled and, as a consequence, exceeded the height limitation.

The UDO contains guidelines for mixed use developments "constructed in accordance with the 'build-to' line." The guidelines state that, "[a]s an incentive, the UDO regulations should provide a bonus for mixed use development"; one such incentive encouraged by the UDO is the inclusion of residential space.[10] Pertinent to the Commission's decision, the UDO development guidelines state:

---

[9] We have not been cited to, nor have we located, a definition of "build-to line" in either the Metro zoning code or the Green Hills UDO. The most analogous term is at Metropolitan Code 17.04.060, where "build-to zone" is defined as "an area established within a given lot indicating where the building frontage must be located. . . ." Applying that definition in the context of this case, the "build-to line" in the Green Hills UDO is 5-15 feet back from Hillsboro Pike.

[10] The incentives are set forth at Section B of the Green Hills UDO; the specific incentive relied upon by Green Hills is Section B.12:

> RESIDENTIAL FLOOR SPACE EXEMPTION: To encourage the inclusion of residential uses in mixed use buildings, floor area designed and built for residential use may be excluded as floor area for the purpose of calculating floor area ratio.

The parties do not raise any issue relating to the calculation of floor area ratio in the Green Hills' plan.

Most of the development incentives result in an increase in floor area. In order to more effectively utilize these incentives, additional floor area that is the result of these development incentives shall be allowed to exceed the maximum floor area of the base zoning.

The effect of the incentives, as noted by the Commission in its brief, could result in "taller buildings being built."

Thirteen of the floors in the residential tower were above the maximum height, which the UDO provides may be exceeded in certain circumstances; the circumstance relied upon by Green Hills is provided for at Section C.2.c.3:

SECTION C: GREEN HILLS URBAN DESIGN OVERLAY BULK STANDARDS. The bulk standards for the Green Hills Urban Design Overlay (UDO) area that vary from the underlying base zone district standards are presented in this section.
*APPLICABILITY OF BASE DISTRICT STANDARDS*: Base district bulk standards that are not varied by the provisions set forth in this section shall apply within the Green Hills UDO.

* * *
2. PROVISIONS THAT APPLY WITH INCENTIVES: Whenever any incentive provisions in SECTION B are incorporated into a mixed-use development, the following standards apply . . . :

* * *
c) Exceptions to the Building Height:

* * *
(3) Maximum building height may be exceeded provided: All floor space on any floor above the maximum height is bonus space from the use of incentives and each additional floor above the maximum building height is set back at least 10 fee from the floor below it.
*Example: Two additional floors will have a total setback of 20 feet, 10 feet for each floor.*[11]

---

[11] A setback is defined as "that part of a lot extending open and unobstructed from the lowest level to the sky, except for permitted obstructions, along the length of a lot line for a depth or width set forth in the bulk regulations for the district in which the lot is located. . . ." Metropolitan Code 17.04.060.

(emphasis in original). Thus, if the developer locates the residential space above the 60-foot height maximum, he/she is required to set each floor above 60 feet at least 10 feet back from the floor below.

It is not disputed that the 13 floors above 60 feet are residential; by application of Section B.12 of the UDO, this residential space is "bonus space from the use of incentives" as that term is used at C.2.c.3.[12] Green Hills located the residential space in the tower, as a result of which the tower exceeded 60 feet. The plan pushed the tower back from the build-to line 10 feet for each floor above the 60-foot maximum, as a result of which it is set back over 130 feet from the build-to line; this complies with the balance of C.2.c.3. Under the record presented, the placement of the residential component of the mixed use development does not violate the height restriction at Section B.5 of the UDO.

Petitioners also contend that the plan did not comply with the SCR base zoning standards because the Green Hills UDO did not change the standard for building height at Metropolitan Code 17.12.060.[13] Petitioners argue that since the rear of the Green Hills property abuts a residential zone, the 60-foot height restriction in the UDO "must . . . be imposed from the boundary of the SCR, which in this case is the rear property line of the Development." This contention is without merit.

Overlay zones operate in established zoned districts by "either altering or supplementing the development restrictions or rights generally afforded landowners therein."[14] Arden H. Rathkopf et al., *Rathkopf's The Law of Zoning and Planning* § 38:9 (4th ed. 2015). They operate by tailoring more specific and distinct restrictions to particular areas. *Id.* at § 38.7. By their nature they supplant conflicting restrictions in the base zone. *See* Metropolitan Code 17.36.020.[15] Of particular pertinence to this case is

---

[12] It is bonus space because it is excluded from the calculation of floor area ratio.

[13] Metropolitan Code 17.12.060 states in pertinent part:

Height Controls Established. No building or other structure shall penetrate the height control plane except as permitted by this section. Height controls shall be imposed from:

1.  All setback lines in the AG, AR2a and residential districts;
2.  All street setback lines in nonresidential districts;
3.  The boundary between an AG, AR2a, RS, R, RM or MHP district and a nonresidential district; . . .

[14] An urban design overlay, like a planned unit design overlay, is regarded as a type of zoning. *See Metropolitan Government of Nashville and Davidson County v. Barry Const. Co., Inc.*, 240 S.W.3d 840, 851 (Tenn. Ct. App. 2007) (stating, "[O]ur case law recognizes that a [Planned Unit Design] overlay is a type of zoning.").

[15] Metropolitan Code §17.36.020 – Applicability, states:

the following language from Section C.2.c.3 of the Green Hills UDO: "Base district standards that are not varied by the provisions set forth in this section shall apply within the Green Hills UDO." Consequently, the resolution of this matter focuses on whether the Green Hills plan complied with the provisions of the Green Hills UDO; if so, there is no conflict with the base zone.

With respect to height controls, Section C.1.a of the UDO, which supplants Metropolitan Code 17.12.060, provides:

1. GENERAL BULK PROVISIONS. The bulk standards that apply broadly to all properties within the UDO are as follows:

a) Front building setback: For any development site within the UDO, either the base zone district building setback provisions or the build-to line provisions of this UDO may be used unless otherwise specified in this appendix. If the build-to line provisions are used, then subsections (b) through (e) below apply.

As permitted by the foregoing, the Green Hills plan uses the build-to line provisions of the UDO; thus, it was not required that the height restriction on the tower be imposed from the boundary of the SCR zone.

As noted earlier, Section B.5 of the UDO sets a maximum height for buildings at 60 feet, which is to be measured at the "build-to line" on Hillsboro Pike; the UDO allows the height limitation to be exceeded provided that each floor above the height limit is "set back at least 10 feet from the floor below it." The Green Hills plan accomplished this by moving the tower more than 130 feet back from the "build-to-line."

---

An overlay district shall represent a mapped geographic area applied to the official zoning map according to the amendment procedures of Chapter 17.40, Article III. Overlay districts may be applied over any zoning district established by this title, and may encompass one or more of those districts. Unless expressly stated otherwise in this chapter, all lands encumbered by an overlay district shall conform to all other applicable provisions of this title.

## IV. CONCLUSION

For the foregoing reasons, the Commission did not exceed its jurisdiction or act illegally in its consideration of the Green Hill application and the approval of the application is supported by material evidence.  The judgment of the trial court is affirmed.

                                     _____

                                     RICHARD H. DINKINS, JUDGE