William K. MULLINS,
Plaintiff-Appellant,

v.

The CITY OF KNOXVILLE, et al.,
Defendants-Appellees.

Court of Appeals of Tennessee,
Eastern Section.

Nov. 15, 1983.

Permission to Appeal Denied by
Supreme Court Feb. 27, 1984.

Keith McCord and James D. Hudson, with McCord & Cockrill, Knoxville, for plaintiff-appellant.

Sharon E. Boyce and Jon G. Roach, with the City Attorney's Office of Knoxville, Knoxville, for defendants-appellees.

## OPINION

SANDERS, Judge.

The Plaintiff has appealed from a decree of the chancery court upholding the action of the city council in rejecting a proposed commercial development plan in a planned residential district zoned RP–1.

In 1974 the Knoxville City Council passed a city ordinance rezoning the Plaintiff's property from R–1, single family residential, to RP–1, or planned residential district. Plaintiff's property is located in West Knoxville adjacent to Papermill Road and Lonas Drive, consisting of approximately 32 acres. Several varied uses are permitted in the planned residential district, RP–1, zoning, including residential, educational, recreational, cultural and commercial. Before any such use is permitted, however, the Knoxville Metropolitan Planning Commission must review and approve the site development plan which details the proposed use. The RP–1 district apparently, as in this case, is usually developed in stages and is known as "plan on review." As each stage is planned it is submitted to the Metropolitan Planning Commission for approval.

Plaintiff submitted his first site development plan in 1977. It provided for construction of apartments on the bulk of the Plaintiff's property. The Metropolitan Planning Commission approved the plan and several hundred apartments were constructed. In 1981 the Plaintiff submitted another set of plans which provided for the development of the commercial section on three acres of the property facing on Papermill Road. After revising the plans as suggested by the Metropolitan Planning Commission, they were approved by the commission.

An association known as the Lonas Drive Community Association, which opposed the commercial development, appealed the decision of the Planning Commission to the city council under a provision of the ordinance which permits such an appeal.

The matter was set for public hearing before the city council. After an informal hearing in which a representative of the Lonas Drive Community Association expressed opposition to the development, the attorney for the Plaintiff asked the city to dismiss the appeal and approve the action of the Planning Commission and a representative of the Planning Commission stated why its staff had recommended approval of the plan. The city council, without expressing any reason for its action, voted five to three to accept the appeal and reverse the action of the Planning Commission.

The Plaintiff applied to the chancery court for a writ of certiorari, which was granted, and upon review of the case the chancellor sustained the action of the city council, finding the planned commercial use was incompatible with the surrounding districts.

The Plaintiff has appealed, insisting the chancellor was in error.

The applicable zoning ordinance sets forth several requirements that must be complied with prior to commercial development on RP–1 land:

"Commercial uses may be permitted in a planned unit development which contains not less than twenty (20) acres...."

"One acre may be set aside for commercial and office development for each one hundred (100) dwelling units in the development."

"Commercial and office development shall have architectural design compatible with surrounding residential development as determined by the planning commission." Knoxville City Code, Appendix A, Zoning Ordinance, art. IV, § 4a.

In addition, the zoning ordinance regulates other aspects such as landscaping, parking, and the use of signs on the property. *Id.* It is uncontested that the Appellant has complied with the provisions set out above. However, two additional requirements must be satisfied. First, "[e]ach planned unit development shall be compatible with the surrounding or adjacent districts. Such compatibility shall be determined by the planning commission by review of development plans for the district." *Id.* Moreover, "[t]he planning commission may deny a use on review where it can be shown that approval would have an adverse impact on the character of the neighborhood in which the site is located. The rationale for planning commission denial including substantive, factual statements of adverse impact, shall be included in the minutes of the planning commission meeting where denials are made." *Id.* at art. VII, § 5. Thus, either incompatibility with or adverse impact on the surrounding neighborhood is a basis for denial of the planned use.

Appellant contends that the city council has only narrow powers of review of the Metropolitan Planning Commission actions. He argues that the council is limited, "much as an administrative appellate board, to the job of reviewing the Planning Commission's deliberations and recommendations to make sure that they are consistent with applicable standards." *Hessee Reality, Inc. v. City of Ann Arbor*, 61 Mich. App. 319, 232 N.W.2d 695, 697 (1975).

Conversely, Appellee claims that the city council retains the right to review proposed site plans *de novo*, independent of the Metropolitan Planning Commission's findings. *See Lagrutta v. City Council of Stockton*, 9 Cal.App.3d 890, 96 Cal.Rptr. 627 (1970) (where the court stated that the "council was not bound by the findings of the commission.... [T]he council may hear the matter de novo and make its own determination as to whether the facts are such as to require, under the provisions of the zoning ordinance, the granting of the variance").

We do not deem it necessary to determine the council's proper standard of review; however, it is clear that even were the council to retain the right to hear the matter *de novo*, its decision must not be arbitrary nor capricious. At this point it must be borne in mind that the city council, in its review of the Plaintiff's application for "Site on Review" approval of the com-

mercial development is not acting in a legislative capacity. It exercised that function in 1974 when it passed the ordinance. It is now exercising the administrative function of determining whether or not the Plaintiff's planned development meets the standards of the ordinance. As an administrative body the council's decision must be based on material evidence. "Administrative action taken after a hearing or upon required findings must have support in the evidence or it is contrary to law, arbitrary, an abuse of discretion, and void." 2 Am. Jur.2d *Administrative Law* § 678 (1962). Here, the Appellant claims the city council acted arbitrarily and capriciously in reversing the decision of the Metropolitan Planning Commission. We agree.

The chancellor, in affirming the city council's action, based his decision upon a determination that the proposed commercial development would be incompatible with the surrounding districts. We fail to find that the evidence supports such a finding.

■ The chancellor states that "[i]t was the contention of the opponents of the commercial use that permitting it would result in the intrusion of commercial use in an otherwise 100% residential area." However, the evidence does not support this contention. At the city council meeting Mr. Schell, the representative for Lonas Drive Community Association, admitted that 0–3 (office) zoning already existed nearby and that there was a "gas station already within one block." In the record there is a zoning map of the subject property and of the surrounding districts. The map shows office property, Zone 0–3, bordering both the east and west sides of Appellant's property and commercial property lies less than a block east of the Appellant's tract. Also, the bulk of Plaintiff's remaining property, zoned RP–1, lies to the north of the planned commercial area. It appears clear, therefore, that the subject property is sufficiently compatible with the surrounding districts.

Moreover, we find no material evidence that the planned commercial use would

have an adverse impact on the character of the surrounding neighborhood. At the city council meeting Mr. Schell asserted that if the commercial use were permitted "the residents along Papermill (Road) will be grossly and adversely affected. The subsequent development of commercial—and you will be deviled with requests for more commercial if you allow this one. This will severely impact Pond Gap school." Later Councilman Mitchell stated that "I think what Dr. Schell is mostly interested in is the school, it is an elementary school. I'd say it is about five hundred feet from the school with no sidewalk and I think this is more or less what they are concerned about...." Beyond these two statements we find nothing else that could be considered evidence that the proposed commercial development would have an adverse impact upon the surrounding neighborhood.

■ Mere beliefs, opinions and fears of neighborhood residents do not constitute material evidence. This court stated, in *Sexton v. Anderson County,* 587 S.W.2d 663, 666 (Tenn.App.1979) that "[i]n the absence of material evidence ... the expression of fears by the members of the community alone, however sincere, will not support the determination of the Board of Zoning Appeals." In *Sexton* the court continued:

"Judicial review of the action of administrative bodies is confined to an examination of the evidence to determine whether there is material evidence to support conclusions that are neither arbitrary nor unlawful."

"[T]o sustain the action of an administrative tribunal, more than a scintilla or glimmer of evidence is required. It must be of a substantial, material nature." *Id.* at 666 (quoting from *Pace v. Garbage Disposal District of Washington County,* 54 Tenn.App. 263 at 266–67, 390 S.W.2d 461 at 463 (1965).

■ Here, at most there is only that scintilla of evidence that the proposed use would have an adverse impact upon the surrounding neighborhood. In the absence

of more substantial proof, this court finds no adverse impact sufficient to serve as a basis for denying Appellant's development.

In the case of *Harrell v. Hamblen County Quarterly Court,* 526 S.W.2d 505 (Tenn.App.1975) this court held:

"Although these adjacent property owners may be justifiably concerned as to the adverse effect that may be had on the value of their property, this does not permit an administrative agency to deny an adjoining property owner the right to use his property for lawful purposes and not in violation of zoning or restrictions. *Application of Garden City Jewish Center,* 2 Misc.2d 1009, 155 N.Y.S.2d 523; *Congregation Committee, North Fort Worth Congregation, Jehovah's Witnesses v. City Council of Haltom City,* Texas Civ.App. 287 S.W.2d 700."

*Also see Wood Brothers Construction Co. v. The Board of Commissioners of Johnson City,* unreported case of Court of Appeals, Eastern Section, filed April 24, 1981.

■ Since the Appellant had complied with all the requirements of the zoning ordinance, we find the city council acted arbitrarily in reversing the Planning Commission and denying approval of Appellant's development plan.

The decree of the chancellor is reversed. The action of the city council in reversing the Metropolitan Planning Commission's approval of the site plan is also reversed and the approval of the plan by the commission is reinstated. The case is remanded for such further proceedings as may be necessary to implement the directives of this opinion. The cost of this appeal is taxed to the Appellee.

GODDARD and FRANKS, JJ., concur.