IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 14, 2018 Session

## GRADY CUNNINGHAM, ET AL. v. BEDFORD COUNTY, TENNESSEE, ET AL.

**Appeal from the Chancery Court for Bedford County**
**No. 30129     J. B. Cox, Chancellor**

_____

### No. M2017-00519-COA-R3-CV

_____

A landowner filed a declaratory judgment action alleging that the Bedford County Board of Commissioners' denial of his request to rezone his property was arbitrary and capricious, violated his due process rights under 42 U.S.C. section 1983, constituted a regulatory taking, and that the Commission violated the Tennessee Open Meetings Act when it met with its counsel prior to taking the vote. The landowner requested compensatory damages for the manner in which his application to rezone his property was handled and compensation for the taking of his property. After a bench trial, the trial court held that the Commission's decision was arbitrary and capricious and violated the landowner's due process rights; the court ordered the property rezoned from residential to commercial and awarded the landowner damages. The court held that there had been no regulatory taking and no violation of the Open Meetings Act. Both parties appeal. Upon review, we have determined that the court erred in holding that the Commission's decision to deny the application for rezoning was arbitrary and capricious and in ordering the property rezoned; in holding that the landowner's due process rights were violated and in awarding damages and attorney fees to the landowner; we affirm the decision in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court of Bedford County is Reversed in Part and Affirmed in Part**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and W. NEAL MCBRAYER, J., joined.

Josh A. McCreary, Murfreesboro, Tennessee, for the appellants, Grady Cunningham, and Celebration 2000, Inc.

Ginger Bobo Shofner, Shelbyville, Tennessee, for the appellees, Tony Smith, Jimmy Patterson, Ed Castleman, Bobby Fox, Billy King, Jr., Bob Davis, Janice Brothers, Phillip Farrar, Mark Thomas, John Brown, Linda Yockey, Tony Barrett, Jeff W. Yoes, Don

Gallagher, Jimmy Woodson, Denise Graham, Joe Tillett, Bedford County, Tennessee, and Bedford County Board of Commissioners.

## OPINION

### I.   FACTUAL AND PROCEDURAL HISTORY

Plaintiff, Grady Cunningham, purchased real estate located at 2506 Highway 231 North, Bedford County, Tennessee ("the Property") on October 13, 2005. At the time of purchase, the property was zoned residential, and he tried unsuccessfully several times to have the property rezoned for commercial use. At issue in this case is his most recent application for rezoning, which was filed in May 2013.

In June 2013, the Bedford County Planning Commission (the "Planning Commission") recommended that the Bedford County Board of Commissioners (the "Commission") rezone the property into the C-2 (commercial) category; the recommendation was put on the agenda for the Commission's July meeting. At that meeting, Mr. Cunningham was the only person who spoke about his rezoning application; a motion to approve the rezoning was made and seconded, but failed to pass.

Mr. Cunningham's rezoning application was then placed on the Commission's agenda for its September 2013 meeting. A public hearing was held as part of the meeting, at which Mr. Cunningham and his attorney spoke in favor of the application; a resident of Candlewood Subdivision, located adjacent to the Property, spoke against it. The minutes of the meeting recite that, at the business portion of the meeting, a motion was made to defer consideration of the rezoning application until the Commission's October meeting in order to "send [Mr. Cunningham's rezoning application] back to the Planning Commission and waive their one-year rule on hearing requests." The motion passed.

The Commission met again on October 8; Mr. Cunningham's application to rezone the property was again on the agenda. Prior to considering the application, the Commission recessed to confer with its attorney. After returning, a motion to approve the application was made and seconded, and the motion failed; neither Mr. Cunningham nor his counsel was given the opportunity to speak prior to the vote.

Mr. Cunningham filed this proceeding in the Chancery Court for Bedford County on January 16, 2014, seeking a declaratory judgment that the denial of his rezoning application was "arbitrary, capricious and illegal for which there is no rational or

justifiable basis."[1]  The complaint alleged that the Defendants violated Mr. Cunningham's constitutional rights to due process and equal protection of laws, that they were liable for inverse condemnation of his property under Tennessee Code Annotated section 29-16-123, and that they violated the Open Meetings Act, Tennessee Code Annotated section 8-44-101, et seq.  Mr. Cunningham moved and was granted leave to amend his complaint to add a claim that Defendants' actions constituted a regulatory taking under *Phillips v. Montgomery County*, 442 S.W.3d 233 (Tenn. 2014).  Mr. Cunningham was granted leave to amend his complaint a second time to add Celebration 2000, Inc., a corporation he owned, as a plaintiff.

The non-jury trial was held on August 23, 25, 26, and September 1, 2016.  On October 28, the court entered its Memorandum Opinion, and on December 2, entered its Final Order and Judgment, which incorporated the Memorandum Opinion and held that:

1. The decision of the Defendant Bedford County Board of Commissioners was arbitrary, capricious and not fairly debatable.

2. The process engaged in by the Defendants violated Mr. Cunningham's due process rights, both procedurally and substantively.

3. There has been no regulatory taking by the Bedford County Board of Commissioners.

4. There has been no violation of the Sunshine Law.

5. The members of the Board of Commissioners were acting within the scope of their authority in carrying out their duties.

The court ordered that the Property be rezoned from residential to commercial, dismissed the Complaint against the individual Commissioners, and awarded Mr. Cunningham damages in the amount of $75,600.00, plus interest, and attorney's fees in the amount of $10,000.00.

Mr. Cunningham moved to alter the judgment on November 23, asking the court to "revisit [the] award of lost profits, including, but not limited to, the time period October, 2013 through the present, and an award of real estate taxes" and "to clarify its finding on violations of substantive and procedural due process."  The court thereafter entered an order declining to alter or amend the monetary award; the court amended the

---

[1] The complaint named Bedford County, the Bedford County Board of Commissioners, and the individual members of the Commission as defendants; in this opinion our reference to the "the Commission" shall, unless otherwise noted, be to all defendants.

3

prior order to add that "[t]he Defendants violated Plaintiffs' substantive and procedural due process in violation of 42 U.S.C. § 1983."

Mr. Cunningham appeals, stating two issues:

Whether the trial court calculated damages correctly when the Defendants violated Plaintiffs' due process rights under 42 U.S.C. section 1983, and the Plaintiff presented expert proof on lost profits and other damage caused by the Defendants' wrongful acts.

Whether the trial court erred by not finding a regulatory taking under *Phillips v. Montgomery County*, 442 S.W.3d 233 (Tenn. 2014).

Defendants raise an additional issue:

Whether the trial court erred in finding that the Bedford County Commission of Commissioners' decision to deny the rezoning request was arbitrary, capricious, and not fairly debatable and that a violation of due process rights under 42 U.S.C. section 1983 occurred.

## II.   STANDARD OF REVIEW

Review of the trial court's findings of fact is *de novo* upon the record, accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Kaplan v. Bugalla*, 188 S.W.3d 632, 635 (Tenn. 2006). Review of the trial court's conclusions of law is *de novo* with no presumption of correctness afforded to the trial court's decision. *Kaplan*, 188 S.W.3d at 635.

## III.   ANALYSIS

### A.   The Denial of the Rezoning Request

The trial court opined that the Commission's decision on Mr. Cunningham's rezoning request was reviewed according to the "fairly debatable, rational basis" standard as articulated in *Fallin v. Knox Cty. Bd. of Com'rs.*, 656 S.W.2d 338 (Tenn. 1983); the court concluded that the Commission's denial of the application was "not fairly debatable," but was, "in fact[,] arbitrary and capricious." On the basis of this holding, the court ordered the Property rezoned. The Commission contends that the trial court should have applied the "rational basis" test and concluded that the Commission had a rational basis for denying Mr. Cunningham's application for rezoning.

"Amending a zoning ordinance is a legislative act . . . intended to protect the health, safety, and welfare of the citizens living in the community covered by the

4

ordinance." *Cato v. The Montgomery Cty. Bd. of Com'r*, No. M2001-01846-COA-R3-CV, 2002 WL 1042179, at *2 (Tenn. Ct. App. May 23, 2002) (citations omitted). Legislative bodies, like the Commission here, are given "broad discretion in enacting or amending zoning ordinances." *Family Golf of Nashville, Inc. v. Metro. Gov't of Nashville*, 964 S.W.2d 254, 260 (Tenn. Ct. App. 1997). "When the act of a local governmental body is legislative, judicial review is limited to 'whether any rational basis exists for the legislative action and, if the issue is fairly debatable, it must be permitted to stand as valid legislation.'" *McCallen v. City of Memphis*, 786 S.W.2d 633, 640 (Tenn. 1990) (quoting *Keeton v. City of Gatlinburg*, 684 S.W.2d 97, 98 (Tenn. Ct. App. 1984)); *see also Cato*, 2002 WL 1042179, at *2 ("[T]he courts will decline to second-guess a decision either to approve or to disapprove an amendment to a zoning ordinance as long as the decision has some conceivable, appropriate basis to justify it."). Accordingly, when the validity of an amendment to a zoning ordinance is fairly debatable, the courts must not substitute their judgment for that of the local legislative body. *Cato*, 2002 WL 1042179, at *2 (citing *McCallen*, 786 S.W.2d at 641).

Mr. Cunningham argues that the opposition of the residents of Candlewood subdivision does not provide a basis on which the Commission could lawfully refuse to rezone his property. He cites two cases in support of his position: (1) *Rogers Grp., Inc. v. Cty. of Franklin, By & Through Franklin Cty. Reg'l Planning Comm'n*, No. 01A01-9110-CH-00378, 1992 WL 85805 (Tenn. Ct. App. Apr. 29, 1992); (2) *Mullins v. City of Knoxville*, 665 S.W.2d 393 (Tenn. Ct. App. 1983). Neither of these cases, however, involved a proposed zoning change which, as noted above, is a legislative act.[2]

---

[2] The plaintiff in *Rogers Group, Inc. v. County of Franklin, By & Through Franklin County Regional Planning Commission* had submitted a plot plan for the operation of a rock quarry, rock crushing plant, and portable hot mix asphalt plant to the Planning Commission, which voted to deny the plan. The decision at issue was to determine if the proposed use fit within the existing zoning, which was an administrative decision because it involved executing laws already in existence. *See McCallen*, 786 S.W.2d at 639 (observing that "[i]n order to qualify as an administrative, judicial, or quasi-judicial act, the discretionary authority of the government body must be exercised within existing standards and guidelines.").

Similarly, in *Mullins v. City of Knoxville*, the plaintiff submitted a "site development plan," which had to be reviewed and approved by the Knoxville Metropolitan Planning Commission before the proposed use would be allowed. 665 S.W.2d at 394. The Commission approved the plan, and a community association appealed the Planning Commission's decision to the city council under a provision of the ordinance which permitted such an appeal. *Id.* The City Council held a hearing at which a representative of the community association expressed opposition to the development, after which the council, without expressing any reason for its action, voted to accept the appeal and reverse the action of the Planning Commission. *Id.* On certiorari review, the chancery court sustained the council's action. *Id.* On further appeal, this court reversed, holding that the proposed use fit within the existing zoning ordinance. *Id.* Thus, *Mullins* is not applicable to the facts before us, as it dealt with an administrative decision rather than a legislative one.

5

The role that community opposition to a rezoning decision plays was before the court in *Day v. City of Decherd*, in which property owners argued that the City "had arbitrarily and capriciously refused to rezone the property from residential to commercial uses." No. 01A01-9708-CH-00442, 1998 WL 684533, at *1 (Tenn. Ct. App. July 1, 1998). On appeal, we rejected the argument, holding that:

> . . . Legislative classifications in a zoning law are valid if any possible reason can be conceived to justify them. *State ex rel. SCA Chemical Waste Services, Inc. v. Konigsberg,* 636 S.W.2d 430 (Tenn. 1982). Specifically, zoning decisions are immune from judicial interference if the validity of the ordinance is "fairly debatable." *Fallin v. Knox County Bd. of Commissioners,* 656 S.W.2d 338 (Tenn. 1983).

*Id.* at *2. In this regard, we recognized that basing a "decision solely on neighborhood opposition" was error when the government body is sitting in an *administrative* capacity; however, we recognized a different approach for *legislative* decisions:

> Legislators, however, do what legislators do: they listen to their constituents; they test the wind; they try to please as many people as possible, consistent with the constitution and a good conscience. And they are not to be condemned for doing so. That is their job.

*Id*. at *3.

Mr. Cunningham argues that "the minutes from the October 2013 County Commission meeting are entirely void of reasons as to why the County Commission did not approve the Plaintiff's application. This alone was enough to require a reversal." Mr. Cunningham cites no authority for this contention, and the law indicates the opposite. As our Supreme Court has recognized:

> [A]dministrative determinations, judicial or quasi-judicial in nature, . . . are accompanied by a record of the evidence produced and the proceedings had in a particular case, whereas, the enactment of ordinances or resolutions, creating or amending zoning regulations, is a legislative, rather than an administrative, action and is not ordinarily accompanied by a record of evidence, as in the case of an administrative hearing.

*Fallin,* 656 S.W.2d at 342. Further, as a legislative decision, the rational basis test is satisfied if there is a "conceivable"[3] or "possible"[4] reason for the Commission's decision.

---

[3] *Cato,* 2002 WL 1042179, at *2.

[4] *Fallin,* 656 S.W.2d at 342.

6

The record shows that residents of the Candlewood Subdivision, which abuts the Property, opposed the request for rezoning. As we have held, "local legislative bodies cannot be faulted for responding to their constituents when it comes to rezoning property as long as their actions are consistent with the state and federal constitutions and with good conscience." *Cato*, 2002 WL 1042179, at \*2 n.5 (citing *Day*, 1998 WL 684533, at \*3). Factually based neighborhood opposition to the request, articulated through statements made before the Commission, is part and parcel of the consideration of rezoning requests. In this context, the opposition from the residents of Candlewood Subdivision is a rational basis for the Commission's decision.

Because there was a rational basis for the Commission's decision, we reverse the trial court's holding that the decision was arbitrary and capricious and ordering the Property rezoned.

B.   **Regulatory Taking**[5]

In the Conclusions of Law portion of the Memorandum Opinion, the court stated that "[t]here has been no regulatory taking by the Bedford County Board of Commissioners as the remedy provided by the Court will allow for Mr. Cunningham to benefit from the rezoning he requested." Although not included as a finding of fact or a conclusion of law, in the Analysis portion of the opinion, the trial court stated:

> Mr. Cunningham bought a piece of property that was zoned R-1 with absolutely no guarantee that it would be rezoned. He did not make his purchase contingent upon rezoning. He did not execute an option that would have allowed him to avoid the risks associated with land ownership if he could not accomplish his intent to have the property rezoned.

In his brief on appeal, Mr. Cunningham contends that the trial court erred in holding that there was no regulatory taking:

---

[5] The evolution of the concept of a regulatory taking was set forth in *Phillips v. Montgomery County*:

> The concept of a regulatory taking first emerged almost a century ago in *Pennsylvania Coal Co. v. Mahon*. While recognizing that government could not function if it had to pay every time regulations diminished land values, the Court held that a taking occurs "if regulation goes too far." With this "storied but cryptic formulation," the Court first declared that governmental action which diminishes private property rights, but which does not amount to a direct appropriation or physical invasion of private property may constitute a taking that necessitates the payment of "just compensation."

442 S.W.3d at 239 (internal citations omitted).

7

The facts in the case clearly establish a basis for a finding of a regulatory taking. Here, the Plaintiff testified without dispute that the subject property was purchased with the expectation of moving his commercial business. He was led to believe at or about the time of buying the property that rezoning the property to C-2 for this purpose would be no problem. Thus, the Plaintiff had a reasonable investment-backed expectation. The Defendants, in violation of existing law, thwarted those efforts for approximately 10 years through improper application of the Bedford County Zoning Ordinance. Thus, the extent to which the regulation was improperly applied and interfered with the Plaintiff's distinct investment-backed expectations was significant.

In considering the "character of the governmental action," the Court specifically found there were problems with the process involved (actually making a finding that the Plaintiffs' due process rights were violated, and that participants on behalf of the County Commission had clear conflicts of interest). Thus, the conduct of the Defendant government in improperly applying the regulation to the Plaintiffs' property was egregious. Clearly, the trial court should have found these actions constituted a regulatory taking under *Phillips v. Montgomery County* and should be reversed on this issue.

For the reasons below, we concur with the holding that no regulatory taking occurred.

In *Phillips v. Montgomery County,* the Tennessee Supreme Court held that article I, section 21 of the Tennessee Constitution, which states that "no man's particular services shall be demanded, or property taken, or applied to public use, . . . without just compensation being made therefor" encompasses regulatory takings to the same extent as the "Takings" clause of the Fifth Amendment to the United States Constitution. 442 S.W.3d 233, at 242-44 (Tenn. 2014) (citing U.S. Const. amend. 5 ("[P]rivate property" shall not be "taken for public use, without just compensation.")). The *Phillips* court reversed the Court of Appeals' judgment dismissing the property owners' petition for certiorari, which had alleged that the Regional Planning Commission's denial of their preliminary plat that would subdivide 15.62 acres constituted a regulatory taking, and remanded the case for consideration of the claim. *Id*. at 236-37, 245. In so doing, the court adopted the principles set forth in *Lingle v. Chevron U.S.A. Inc.*, stating:

The *Lingle* Court reiterated the two categories of governmental regulatory actions generally recognized as *per se* takings under the Fifth Amendment. The first category involves situations in which the government "requires an owner to suffer a permanent physical invasion of her property—however minor" and therefore must provide the owner just compensation. The second category consists of "total regulatory takings,"

8

in which governmental action deprives a property owner of "'*all* economically beneficial us[e]*' of her property." Both categories of per se regulatory takings are "relatively narrow," *id.,* and the latter especially "rare."

   *Lingle* also instructed that when a claim involves neither of these categories, governmental action alleged to constitute a regulatory taking must be assessed under the standards first established in *Penn Central Transportation Co. v. New York City.* The two "primary" Penn Central factors to be considered are "[t]he economic impact of the regulation on the claimant and, particularly, the extent to which the regulation has interfered with distinct investment-backed expectations." The "character of the governmental action" may also be a third factor that will be relevant to determining if a taking has occurred. These "ad hoc, factual inquiries, [and] careful examination and weighing of all the relevant circumstances," have been widely recognized as the "polestar" of federal takings law.

442 S.W.3d 233, 240 (Tenn. 2014) (internal citations omitted).

   Mr. Cunningham does not cite to specific testimony, other evidence, or particular findings of the court in support of his argument. We have identified the following findings that are pertinent to the holding that no regulatory taking occurred:[6]

   1.  Mr. Cunningham purchased the property in question in 2005, knowing it was zoned R-1.

   2.  Mr. Cunningham did not make his contract to purchase contingent upon a zoning change.

   3.  Mr. Cunningham did not purchase his property by use of an option so that he would not be bound to purchase the property if the rezoning could not be accomplished.

   \*\*\*

   7.  Mr. Cunningham's first application in 2005 was made before he had actually closed on the property.
   \*\*\*

---

[6] Neither party contends that the trial court's findings are not supported by the evidence, nor cites to evidence that preponderates against any finding.

19. His May 2013 application came before the Planning Commission in June of 2013 and the Planning Commission voted to recommend rezoning of the property to C-2.

20. Mr. White, the Planning and Zoning Director, opined that the property met all the requirements to comply with Mr. Cunningham's request, and he recommended rezoning the property as C-2.

21. Ms. Keylon [a consultant for the Planning Commission] also opined that the property met all the requirements, and in her opinion should be rezoned C-2.

\*\*\*

25. At the County Commission meeting in July of 2013, a motion was made and seconded that the property should be rezoned. This motion failed by a majority vote.

\*\*\*

43. [At a meeting of the County Commission on October 8, 2013,] [t]he motion to rezone the property was voted upon and it failed by a majority of the votes of the Commissioners.

\*\*\*

127. Mr. Cunningham testified that he bought the property to be a commercial property and he wanted to move his business out to that location, and that it would be a good investment for his kids and grandkids.

128. He paid $180,000.00 for the property and has paid interest on the note over the years.

129. He pays $1,200.00 per month rent in his present location.

130. Mr. Cunningham has a note on the property and he pays interest at a rate of six percent on this note and has done so since he purchased the property.

Mr. Cunningham does not argue that the Commission's decision falls into either category of *per se* takings identified in *Lingle* and adopted in *Phillips*; consequently, in our resolution of this issue we look to the three "Penn Central" factors, adopted in *Phillips*, quoted above.

10

1. **The economic impact of the regulation on Mr. Cunningham.** The trial court found that Mr. Cunningham incurred a $180,000 obligation to purchase the Property in order to locate his existing business there. As a result of having his rezoning application denied he has been unable to relocate his business there and continues to pay rent at his current location. The court correctly found that he did not take action that would have protected him if the rezoning was not successful.

2. **The extent to which the regulation has interfered with his distinct investment-backed expectations.** Mr. Cunningham's argument in this regard proceeds on the premise that Commission was in some manner obliged to grant his request to have his property rezoned. He fails to identify the "existing law" he contends the Commission violated or to delineate the "improper application of the Bedford County Zoning Ordinance" of which he complains. Simply put, his expectation that the property would be rezoned does not create a legal obligation on the Commission to approve his application. His planned use of the property was in fact a hopeful use. Mr. Cunningham knew the property was zoned residential at the time he purchased the property, and he also knew that he intended to use the property for commercial purposes. The trial court specifically found that "Mr. Cunningham bought a piece of property that was zoned R-1 with absolutely no guarantee that it would be rezoned"; that "Mr. Cunningham purchased the property in question in 2005, knowing it was zoned R-1"; that "Mr. Cunningham did not make his contract to purchase contingent upon a zoning change"; and that "Mr. Cunningham did not purchase his property by use of an option so that he would not be bound to purchase the property if the rezoning could not be accomplished." While he argues that "[h]e was led to believe at or about the time of buying the property that rezoning the property to C-2 for this purpose would be no problem," Mr. Cunningham cites no evidence, and we have found none in the record, that would give rise to this belief, or that, in any event, would require the Commission to approve his application.

3. **The character of the governmental action.** Mr. Cunningham references the court's holdings that his due process rights were violated and that some of the Commission members had conflicts of interest as bearing on this inquiry. The action at issue, however, is the denial of his rezoning application; as held earlier, there was a rational basis for the Commission's decision and, as a consequence, no element of a regulatory taking was presented in the denial of the application.

On the record presented, we conclude that no regulatory taking occurred and affirm the court's holding in this regard.[7]

---

[7] In the Memorandum Opinion, the court held that there had not been a regulatory taking "as the remedy provided by the Court will allow for Mr. Cunningham to benefit from the rezoning he requested." We affirm the trial court's dismissal of this claim on the basis stated herein and not upon the rationale stated by the trial court. *See* Section III A, *supra*.

11

### C. Due Process Claims

Private citizens whose federal rights have been violated by state officials are afforded a remedy via 42 U.S.C.A. section 1983.[8] *Parks Props. v. Maury County,* 70 S.W.3d 735, 743 (Tenn. Ct. App. 2001). As noted in *Parks Props.*:

> Section 1983 creates no substantive rights of its own. Rather, it creates a species of tort liability that provides a federal cause of action for the violation of rights independently established either in the United States Constitution or federal law. Thus, the first step in analyzing any Section 1983 claim is to identify the specific federal right allegedly being infringed. There can be no successful claim under Section 1983 unless the defendant has deprived the plaintiff of a right "secured by the Constitution and laws" of the United States.

> The Due Process Clause provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." As interpreted by the United States Supreme Court, the Due Process Clause safeguards rights in two ways. First, procedural due process requires state and local governments to employ fair procedures when they deprive persons of a constitutionally protected interest in "life, liberty, or property." Procedural due process protections do not prevent deprivations of "life, liberty, or property" but rather guard against "substantively unfair or mistaken deprivations of property."

> The Due Process Clause, however, guarantees more than fair process. It also has a substantive component that bars certain governmental actions regardless of the procedures used to implement them. Thus, substantive due process is the second way that the Due Process Clause protects "life, liberty, or property."

---

[8] 42 U.S.C.A. section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

70 S.W.3d. at 743-44 (internal citations and footnotes omitted).

### 1. *Procedural Due Process*

In *Martin v. Sizemore,* this court discussed the nature of the interest protected by procedural due process:

The Due Process Clause of the Fourteenth Amendment and Tenn. Const. art. I, § 8 provide similar procedural protections and guarantees. Both provisions provide procedural protections for property and liberty interests against arbitrary governmental interference. While they contain a guarantee of fair process, they do not prevent the deprivation of property interests. Rather, procedural due process guards against unfair or mistaken deprivations of property interests.

The threshold consideration with regard to any procedural due process claim is whether the plaintiff has a liberty or property interest that is entitled to protection under U.S. Const. amend. XIV, § 1 and Tenn. Const. art. I, § 8. To qualify for constitutional protection, a property interest must be more than a "unilateral expectation" or an "abstract need or desire." It must be a "legitimate claim of entitlement" created and defined by "existing rules or understandings that stem from an independent source such as state law."

The types of interests entitled to protection as property interests are varied. However, they share the common characteristic that they are an individual entitlement, grounded in state law, that cannot be removed except "for cause."

*Martin,* 78 S.W.3d 249, 262 (Tenn. Ct. App. 2001) (internal citations omitted). Further, as noted in *Rowe v. Board of Education*:

A section 1983 action based upon procedural due process has thus three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; and (3) lack of process. In addressing a claim of an unconstitutional denial of procedural due process, we apply a two-step analysis. Initially, we must determine whether [the plaintiff's] interest rises to the level of a constitutionally protected liberty or property interest. If there is a constitutionally protected interest, then the second step is to weigh the competing interests of the plaintiff and government to determine what process is due and whether deprivation has occurred.

13

938 S.W.2d 351, 354 (Tenn. 1996) (internal citations omitted). "The extent and nature of the required procedural due process protections depend on the nature and circumstances of the case." *Martin*, 78 S.W.3d at 263.

While he accurately states that procedural due process protects against unfair deprivations of property, Mr. Cunningham has not identified any constitutionally protected property interest that would implicate the protections of the due process clause in this case. The property was zoned residential at the time he purchased it, and he sought to have it rezoned for commercial purposes; he does not challenge the fact that the property was zoned residential but, rather, the failure of the Commission to grant his application to rezone. He has failed to demonstrate that he was entitled to have it rezoned and, consequently, was not deprived of procedural due process.[9] He has no legitimate claim of entitlement to a discretionary decision. *Richardson,* 218 F.3d at 517.

Even if we were to assume that Mr. Cunningham succeeded in showing a constitutionally protected property interest, in weighing "the competing interests of the plaintiff and government to determine what process is due and whether deprivation has occurred" here, Mr. Cunningham received the process he was due. *See Martin*, 78 S.W.3d at 263. "At its core, procedural due process requires 'notice and an opportunity to be heard at a meaningful time and in a meaningful manner.'" *Puckett v. Lexington-Fayette Urban Cty. Gov't*, 833 F.3d 590, 606 (6th Cir. 2016) (quoting *Garcia v. Fed. Nat'l Mortg. Ass'n*, 782 F.3d 736, 740–41 (6th Cir. 2015)). Mr. Cunningham had notice of the meetings at which his rezoning application would be considered, both before the Planning Commission and the Commission. He spoke at the July 2013 meeting of the Commission when the Commission first considered the application; when the application was heard at the Commission's September meeting, he appeared, with his attorney, and again advocated for its approval. While Mr. Cunningham takes issue with the fact that he was not afforded a chance to speak during the October meeting, his prior appearances before the Commission afforded him procedural due process.

---

[9] In *Richardson v. Township of Brady*, the Sixth Circuit Court of Appeals held:

> "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). In order to state a successful procedural due process claim, therefore, Richardson must establish the existence of a protected property interest. An abstract need or unilateral expectation does not suffice to create a property interest; rather, a person must "have a legitimate claim of entitlement." *Id* at 577, 92 S.Ct. 2701. The Supreme Court has explained that the Constitution does not create property interests: "[T]hey are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.*

218 F.3d 508, 516-17 (6th Cir. 2000).

14

## 2. *Substantive Due Process*

As noted earlier, amending a zoning ordinance is a legislative act. *Cato*, 2002 WL 1042179, at *2. In our consideration of this issue, we are guided by the discussion in *Parks Properties*:

> The substantive due process analysis applies to both legislative acts and non-legislative or executive acts. Legislative acts, generally including statutes, ordinances, and broad administrative regulations, apply to large segments of society; while non-legislative or executive acts typically apply to one person or a limited number of persons.
>
> Typically, a legislative act will withstand a substantive due process challenge if the government identifies a legitimate governmental interest that the legislative body could rationally conclude was served by the legislative act. Legislative acts that burden certain fundamental rights may be subject to stricter scrutiny.
>
> * * *
>
> To prevail on a substantive due process claim under Section 1983, a plaintiff must establish as a threshold matter that it has an interest entitled to protection under the Due Process Clause. These interests are limited to interests in "life, liberty, or property" and other interests explicitly protected by other constitutional provisions. Regrettably, the case law provides relatively little specific guidance as to what constitutes a property interest worthy of substantive due process protection.
>
> When a Section 1983 claim is based upon the alleged deprivation of a property interest, the property interest must be something more than either an abstract need or desire or a unilateral expectation of a claimed right. Rather, the person claiming the property right must have a legitimate claim of entitlement to it.
>
> The United States Constitution does not create property interests. They are created and their dimensions are defined by existing rules and understandings that stem from independent sources such as state law. However, the courts must look to federal law to determine whether a particular property right is entitled to substantive due process protection. For a property right to provide a basis for a substantive due process claim under Section 1983, the right must involve an interest that is deemed to be fundamental under the United States Constitution.

15

*Parks Prop.*, 70 S.W.3d at 743–45 (internal citations omitted).

In *Parks Properties*, the developers of a warehouse facility filed suit to compel the Director of Community Development for the County to issue a building permit, contending that the Director and the Planning Commission had agreed to waive a requirement that the warehouses have automatic sprinkler systems, and to recover damages under 42 U.S.C. section 1983. *Id*. at 740. The trial court held that the county had violated the developers' substantive due process rights and awarded damages of $445,152.55. *Id*. at 741. On appeal this court reversed, holding that neither of the developers had a property interest protected by substantive due process. *Id*. at 749. In so ruling, we noted:

> Section 1983 claims by developers against local building and zoning officials are common, even though rejections of development projects and refusals to issue building permits do not ordinarily implicate substantive due process concerns. For these sorts of claims, a protectable property interest is "what is securely and durably yours under state or federal law, as distinct from what you hold subject to so many conditions as to make your interest meager, transitory, or uncertain." When seeking a permit or authorization, a developer has a protectable property interest in a permit or authorization only if it can prove that it has a legitimate claim of entitlement to the permit or authorization.

> The application of this "strict entitlement" test focuses on the extent to which the local authority may exercise discretion in arriving at a decision. A property interest protectable by substantive due process exists if the local authority has no discretion to decline to issue a permit, license, or other authorization to an applicant who demonstrates compliance with all pre-existing requirements. On the other hand, no protectable property interest in a permit or authorization exists if the local authority retains broad discretion to grant or deny the permit or authorization.

*Parks Prop.* 70 S.W.3d at 746 (internal citations omitted).

In the present case, as noted earlier, the Commission retained broad discretion to amend the zoning ordinance. As respects Mr. Cunningham's substantive due process rights at issue, we discern no difference between the "broad discretion to grant or deny the permit or authorization" at issue in *Parks Properties* and the discretion vested in the

16

Commission to grant or deny his rezoning request. In the absence of such a protectable property interest, Mr. Cunningham was not deprived of substantive due process.[10]

Accordingly, we reverse the trials court's holding that Mr. Cunningham's rights to procedural and substantive due process were violated.

### D. Award of Damages and Fees

The trial court did not specify the basis upon which it awarded damages of $75,600; the $10,000 award of attorney's fees was made "pursuant to the [unspecified] statute." Inasmuch as we have reversed the holdings that would give rise to a claim for monetary relief, we reverse the awards of damages and attorney's fees.

## IV. CONCLUSION

For the foregoing reasons, we reverse the holding that the Commission's decision to deny the rezoning application was arbitrary and capricious and the order that the property be rezoned; we reverse the holding that Mr. Cunningham's rights to due process were violated; and we reverse the awards of damages and attorney's fee; we affirm the holding that there was no regulatory taking of Plaintiffs' property.

_____
RICHARD H. DINKINS, JUDGE

---

[10] In his brief, Mr. Cunningham asserts that a denial of an amendment to a zoning ordinance may violate substantive due process if it is "arbitrary, capricious, or not rationally related to a legitimate public purpose." Our holding in III. A., *supra*, addresses this argument.